UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____ )
CENTER FOR INDIVIDUAL FREEDOM, )
)
Plaintiff, )
v. )
) Case No. _____
CHARLES R. SCOTT, District Attorney, 1st )
Judicial District; ) Judge: _____
)
M. BLAKE MONROSE, Chairman of the )
Louisiana Board of Ethics and the )
Supervisory Committee for Campaign )
Finance; )
)
SCOTT SCHNEIDER, Vice-Chairman of the )
Louisiana Board of Ethics and the )
Supervisory Committee for Campaign )
Finance; )
)
TERRY BACKHAUS, of the Louisiana )
Board of Ethics and the Supervisory )
Committee for Campaign Finance; )
)
JULIE E. BLEWER, of the Louisiana Board )
of Ethics and the Supervisory Committee for )
Campaign Finance; )
)
CHARLES EMILE "PEPPI" BRUNEAU, )
JR., of the Louisiana Board of Ethics and the )
Supervisory Committee for Campaign )
Finance; )
)
JEAN INGRASSIA, of the Louisiana Board )
of Ethics and the Supervisory Committee for )
Campaign Finance; )
)
DR. LOUIS LEGGIO, of the Louisiana Board )
of Ethics and the Supervisory Committee for )
Campaign Finance; )
)
)
)

PD.10480390.1

| | |
|---|---|
| DR. STEVE LEMKE, of the Louisiana Board of Ethics and the Supervisory Committee for Campaign Finance; | ) ) ) ) |
| BOB MCANELLY, of the Louisiana Board of Ethics and the Supervisory Committee for Campaign Finance; | ) ) ) ) |
| ASHLEY KENNEDY SHELTON, of the Louisiana Board of Ethics and the Supervisory Committee for Campaign Finance; | ) ) ) ) ) |
| GROVE STAFFORD, of the Louisiana Board of Ethics and the Supervisory Committee for Campaign Finance; | ) ) ) ) |
| Defendants. | ) |

_____

# COMPLAINT

### Nature of the Action

1. This action seeks to vindicate free speech, free association, and due process rights guaranteed by the First and Fourteenth Amendments to the United States Constitution. In substantial part, this action seeks to vindicate and implement rights previously adjudicated and declared in an action by Plaintiff against Defendants' predecessors-in-office in *Center for Individual Freedom, Inc. v. Carmouche*, 449 F.3d 655 (5th Cir. 2006). In *Carmouche*, the United States Court of Appeals for the Fifth Circuit declared that Louisiana's statutory definition of "expenditure" is vague and must be construed to regulate only "express advocacy" as that term is defined by *Buckley v. Valeo*, 424 U.S. 1, 44 n.52 (1976). *Carmouche* was explicit that if Louisiana wanted to adopt some other sufficiently precise standard, only the state "*legislature*" – not a government agency – could make that choice. *Id.* at 665 (emphasis by court).

- 2 -

2.      *Carmouche* Defendants, their successors, and those in privity with them have disregarded that binding ruling and, without any legislative amendment to the statutory definition at issue, have begun applying a vague and broad construction that violates both the prior declaration by the Court of Appeals and the U.S. Constitution.  This occurred in at least the following Board of Ethics matters:  *In the Matter of Louisiana Justice Fund*, Agency Tracking No. 2007-842; and *In the Matter of Scott Wilfong and Capital Business Services L.L.C.*, Agency Tracking No. 2008-757.  In neither of those cases did the challenged speech employ explicit words such as "vote for" to expressly advocate a vote for or against a candidate within the meaning of *Carmouche* and *Buckley*.  Nor did Defendant make any claim that so-called "magic words" of express advocacy were present.  Instead, Defendants and their authorized agents initiated and pursued enforcement on the basis of an asserted statutory meaning rejected by the Fifth Circuit in *Carmouche*.  Defendants' actions have deterred Plaintiff from speaking in Louisiana.  Plaintiff therefore seeks further relief to implement the earlier declaration pursuant to 28 U.S.C. § 2202, as well as relief directly under 42 U.S.C. § 1983; 28 U.S.C. § 2201 and § 2202; and the First and Fourteenth Amendments, holding the statute unconstitutionally vague and void, enjoining any enforcement of it or forbidding enforcement of any meaning other than that established in *Carmouche*, and granting all other appropriate remedies, including an award of legal fees and expenses pursuant to 42 U.S.C. § 1988.

### Jurisdiction

3.      Because this action seeks further relief in an action in which this Court's jurisdiction already has been finally adjudicated, subject matter jurisdiction exists here.  Moreover, because this action arises under the Constitution and laws of the United States, this

Court has federal question jurisdiction under 28 U.S.C. § 1331.  Jurisdiction is also proper under 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation of civil rights.

**Venue**

4. This is a continuation of the *Carmouche* action in which venue was established here.  A Defendant resides in this District and a substantial part of the events or omissions underlying the claim occurred in this District.  Hence, venue is proper under 28 U.S.C. § 1391(b).

**Parties**

5. Plaintiff Center for Individual Freedom ("CFIF") is a non-profit organization whose mission is to protect and defend individual freedoms and individual rights guaranteed by the U.S. Constitution.

(a) CFIF seeks to focus public, legislative, and judicial attention on the rule of law as embodied in the federal and state constitutions and structural protections that constrain and disperse governmental authority.  It also seeks to foster intellectual discourse and to promote education that reaffirms the imperatives of the U.S. Constitution and principles of economic liberty as they relate to contemporary conflicts.  Its goals, principles, and activities are more fully described on its Internet website at http://www.cfif.org.

(b) CFIF often chooses to speak in times prior to elections when the public is most focused on the types of issues of concern to CFIF and when candidates provide useful illustrations of CFIF's views.  Since 2000, CFIF has run broadcast and print advertisements in the District of Columbia and States including Alabama, Illinois, Pennsylvania, Virginia, and West Virginia, as well as nationally, on matters of public importance ranging from constitutional

rights to judicial issues to taxation issues to concerns about public corruption to the right of citizens not to be compelled to fund speech with which they disagree. CFIF's ads typically have pointed out the positions of candidates in pending races in the context of discussing issues to which those positions are relevant.

(c) Consistent with its commitment to individual freedom, CFIF staunchly and zealously guards the privacy of its donors. Also, for reasons of privacy and due to the sometimes controversial nature of the issues in which CFIF engages, many CFIF donors require assurances that their identities will not be publicly disclosed. If CFIF were to begin publicly disclosing its donors, its revenues would fall and its ability to speak would be impaired. Accordingly, CFIF speaks only where it can be confident in advance that doing so does not risk triggering disclosure or other similar regulatory burdens. Where the controlling standard is *Buckley* and its so-called magic words of express advocacy as adopted by *Carmouche*, CFIF is able to understand and apply that standard. The CFIF ads described above did not include magic words of express advocacy and, thus, did not require CFIF to disclose its donors in the relevant jurisdictions.

(d) CFIF is a corporation organized under the laws of the Commonwealth of Virginia and operates as tax exempt under § 501(c)(4) of the Internal Revenue Code. Its headquarters address is 815 King Street, Suite 303, Alexandria, VA 22314.

6. Each Defendant is legally responsible for enforcing the campaign finance laws of the State of Louisiana that are challenged in this action. Each of them has sworn to enforce the laws of the State of Louisiana within their field of responsibility, and each stands ready, willing, and able to do so. They are proper persons to defend the interest of the State. Each Defendant is

a successor in office to an original party in the *Carmouche* case, subject to automatic substitution by Fed. R. Civ. P. Rule 25(d) with respect to the *Carmouche* declaration:

  (a) Defendant Charles R. Scott is the District Attorney for the 1st Judicial District. He is charged with criminal enforcement of the challenged laws by R.S. 18:1511.6. He resides in Shreveport, Louisiana. As the successor to former Defendant Paul J. Carmouche, he is bound by and has a direct interest in the continued meaning of the *Carmouche* holding and is named as a party for that reason.

  (b) Defendant M. Blank Monrose is Chairman of the Louisiana Board of Ethics ("Board") and the Supervisory Committee for Campaign Finance ("Committee"), which are charged with civil enforcement of the challenged laws by R.S. 18:1511.5.[1] He resides in Lafayette, Louisiana. The Committee is comprised of the Board. R.S. 18:1511.1. The Committee has special statutory authority to clarify provisions of the challenged laws, define the terms used in those laws, apply a general term to specific circumstances, initiate the enforcement process, and render advisory opinions. R.S. 18:1511.2, 18:1511.5 & 18:1511.6.

  (c) Defendant Scott Schneider is Vice-Chairman of the Board and Committee. He resides in Mandeville, Louisiana.

  (d) Defendant Terry Backhaus is a Member of the Board and Committee. He resides in Sulphur, Louisiana.

  (e) Defendant Julie E. Schneider is a Member of the Board and Committee. She resides in Shreveport, Louisiana.

---

[1] Information about the Board's members and their cities of residence are taken from the agency's website at http://ethics.la.gov/BoardMembers.aspx.

(f) Defendant Charles Emile "Peppi" Bruneau, Jr. is a Member of the Board and Committee. He resides in New Orleans, Louisiana.

(g) Defendant Jean Ingrassia is a Member of the Board and Committee. She resides in Gonzales, Louisiana.

(h) Defendant Dr. Louis Leggio is a Member of the Board and Committee. He resides in Baton Rouge, Louisiana.

(i) Defendant Dr. Steve Lemke is a Member of the Board and Committee. He resides in New Orleans, Louisiana.

(j) Defendant Bob McAnelly is a Member of the Board and Committee. He resides in Baton Rouge, Louisiana.

(k) Defendant Ashley Kennedy Shelton is a Member of the Board and Committee. She resides in Baton Rouge, Louisiana.

(l) Defendant Grove Stafford is a Member of the Board and Committee. He resides in Alexandria, Louisiana.

**The Challenged Laws**

7. Louisiana has adopted complex laws that operate to restrict the rights of Americans to discuss issues of public importance during periods when, due to the pendency of an election, citizens are most interested in and attuned to such discussion. Those laws are referred to generally as the Campaign Finance Disclosure Act, R.S. 18:1481, *et seq.* ("CFDA"). In a nutshell, the CFDA heavily burdens the public speech of any person (individual, corporate, or otherwise) – even though the speech is independent of any candidate, campaign, or political

party – if it costs more than $500 and falls within a sweeping, overbroad, vague, and subjective standard of relationship with any election, threatening criminal and civil penalties for a violation.

### The Key Statutory Definition

8. As relevant to this action, the CFDA regulates "expenditures" and "contributions," defining them as transfers of money or other things of value: "for the <u>purpose of supporting, opposing, or otherwise influencing</u> the nomination or election of a person to public office." R.S. 18:1483(9)(a) (emphasis added); R.S. 18-1483(6)(a). Thus, a donation for the purpose of an expenditure is a contribution. Moreover, an expenditure "made by any person in cooperation, consultation, or concert, with, or at the request or suggestion of, a candidate, his authorized political committees, or their agents . . . shall be considered to be a contribution to such candidate." R.S. 18:1483(6)(b)(i). (Certain voluntary personal services and internal organizational communications are excluded from the definition of an expenditure. R.S. 18:1483(a), (d).) Spending for speech in any medium may be regulated, including radio, television, print periodicals, or handbills.

9. All persons (individual, corporate, or otherwise) are forbidden to engage in public speech involving an expenditure of more than $500 during an election period unless that person files detailed, intrusive, and burdensome reports. R.S. 18:1501.1, 18:1491.7. Among other information, the required contents of such a report include, in addition to basic organizational and identifying information:

(a) The full name and address of each person who has made any contribution to the reporting entity in any amount for any purpose at any time during the entire reporting

period. R.S. 18:1491.7.B.(4)(a).[2] There is no *de minimis* exception, nor is there any exception for contributions made in other states for purposes unrelated to speech in Louisiana.

(b) The aggregate amount of all contributions received from all sources and for all purposes during the reporting period. R.S. 18:1491.7.B.(4)(c).

(c) The total amount of all expenditures made by the reporting entity during the reporting period. R.S. 18:1491.7.B.(12).

(d) The full name and address of "each person to whom an expenditure has been made" during the reporting period, along with "the amount, purpose, and date of each such expenditure." R.S. 18:1491.7.B.(13).

(e) The total amount of cash and cash investments on hand at the end of the prior reporting period, the total of all contributions received and accepted during the reporting period, and all cash income from investments received during the reporting period. R.S. 18:1491.7.B.(1), (2), (3).

10. Engaging in public speech via an "expenditure" as defined above is a violation of the challenged laws unless every required report is filed and it accurately discloses all of the mandated information. R.S. 18:1505.1.

(a) Any knowing failure to comply risks a civil penalty of up to $100 per day that the report is not filed, plus $10,000. R.S. 18:1505.4.

---

[2] There are special rules and thresholds for reporting contributions made by payroll deduction, *see* R.S. 18:1491.7.B.(4)(b), but these rules are inapposite in this case.

  (b) Further civil penalties are provided for "knowing and willful" violations, a term defined to include any "conduct which could have been avoided through the exercise of due diligence." R.S. 18:1505.5. Louisiana courts frequently have construed a "due diligence" standard to equate to simple negligence.

  (c) Criminal penalties of a fine and imprisonment for up to six months may be imposed for violations committed "knowingly, willfully, and fraudulently." R.S. 18:1505.6. The term fraudulently is not defined by the statute.

  11. Similarly, persons are forbidden to accept contributions of more than $500 per year to finance speech that has the "purpose" of "supporting, opposing, or otherwise influencing" the nomination or election of a candidate unless that person files the same type of detailed, intrusive, and burdensome reports described in paragraph 9 above with respect to persons making expenditures. R.S. 18:1501.1, 1491.7.

  12. In addition, Louisiana imposes burdensome disclosure and reporting obligations on a "political committee." R.S. 1483(14)(a)(i), 1491.6, & 1491.7. A "political committee" is defined as "two or more persons, other than a husband and wife, and any corporation organized for the primary purpose of supporting or opposing one or more candidates, propositions, recalls of a public officer, or political parties, which accepts contributions in the name of the committee, or makes expenditures from committee funds or in the name of the committee, or makes . . . or receives a transfer of funds from another committee, or receives or makes loans in an aggregate amount in excess of five hundred dollars within any calendar year." R.S. 18:1483(14)(a)(i). Thus, the statutory "purpose" that defines expenditures and contributions also is an important part of the definition of a political committee.

13. Louisiana's statutory definition of the purpose that gives rise to a regulated expenditure or contribution parallels federal statutory language that the U.S. Supreme Court held to be unconstitutionally vague and overbroad unless subjected to a narrowing construction. *Buckley*, 424 U.S. at 40-44 & n.52, 77-80. In *Carmouche*, the United States Court of Appeals for the Fifth Circuit held that, to save Louisiana's statutory definition of purpose from invalidity on grounds of vagueness, Louisiana's law had to be and was declared to have the same narrow and precise meaning the United States Supreme Court gave to similar language in *Buckley*. In relevant part, the court said that it could construe the "for the purpose of supporting, opposing, or otherwise influencing" language in "a way that saves it from constitutional infirmity" by imposing *Buckley*'s "limiting construction on the statute, bringing it within constitutional bounds by drawing a line between express advocacy and issue advocacy." *Id.* at 664. *Carmouche* declared that this standard applies only to "communications that expressly advocate the election or defeat of a clearly identified candidate." *Id.* at 665. In "limiting the scope of the CFDA to express advocacy, [the court adopted] *Buckley*'s definition for what qualifies as such advocacy" – i.e., the communication must contain explicit words such as "vote for," etc. *Id.* The court said it was imposing a "magic words requirement" until and unless Louisiana amended its statute. *Id.* at 666 n.7.

14. Louisiana has not enacted any legislation to change the meaning of its statute as pronounced in *Carmouche*. Nevertheless, Defendants and their successors, acting through the Board and Committee, have initiated and pursued enforcement proceedings against alleged expenditures on the claim that the type of express advocacy required in *Carmouche* is not necessary. For example, the Board asserted that the Louisiana Justice Fund paid for a television advertisement "making accusations against Royal Alexander, a candidate for Attorney General in

the October 20, 2007 election" that constituted express advocacy under Louisiana's laws. Decl. of Jeffrey L. Mazzella, Ex. A. The Board based its conclusion on the ad's script, which stated as follows:

> Narrator: Royal Alexander. Shaking down contributors, selling favors. Alexander offered lobbying help to corporate executives in exchange for campaign contributions.
>
> His email to contributors: If I become Attorney General I will be in a position to help your industry. Let me know when we can schedule a fund raiser.
>
> The Times Picayune says Alexander's fund raising warrants an investigation to determine if he violated state laws.
>
> Alexander: Public corruption is corrosive. (Sound bite from an Alexander ad).
>
> Narrator: Don't let Alexander's ads fool you. He seems already on the take.
>
> The ad then ends with a message urging persons to call the Louisiana Ethics Board and to request an investigation.

*Id.* The Board did not identify any magic words in the ad and contended that Louisiana law could regulate the ad even if it lacked magic words, asserting that Louisiana's statute could be interpreted more broadly to encompass, for example, speech that had a "function[]" found to be "equivalent" to express advocacy.

15. In a second example, the Board asserted that a flier entitled "POLITICIANS - SEX ENDANGERING POLICE OFFICERS," mailed in late July 2008, and paid for by Scott Wilfong/Capital Business Services, L.L.C. "expressly advocated the defeat of a clearly identified candidate." Decl. of Jeffrey L. Mazzella, Ex. B. The Board based its conclusion on the following language from the ad:

> Police officers are still guarding and delivering Mayor Holden to his rendezvous . . . . While the Mayor dances the night away and fulfills his sexual fantasies, the body guards (Baton Rouge police officers) are being paid overtime at the tax payer's expense . . . . Please join with us in demanding legal and moral conduct from our public officials.

*Id.* Again, the Board identified no magic words and asserted that Louisiana's statute is not defined to require magic words of express advocacy, but instead may be interpreted more broadly.

### The Injury to Plaintiff

16. Twice now CFIF has been forced to refrain from speech about issues of public policy and stand silent because of the vague Louisiana statute and the refusal of Defendants or their predecessors to conform to the demands of the First and Fourteenth Amendments, even as directly declared by the Fifth Circuit. A third instance is impending, and still more instances will occur in the future unless effective relief is granted.

17. The first such instance of self-censorship occurred between August 2004 and May 2006, around the time CFIF filed its original lawsuit until the Fifth Circuit issued its ruling. At that time and continuing into the future, CFIF had planned public speech that would address vital public issues relating to the administration of justice in Louisiana, referring to candidates for election to the Louisiana Supreme Court and other offices to illustrate and persuade. But due to the vague language in Louisiana's campaign finance laws, CFIF could not determine whether its planned speech – which would avoid words such as "vote for" or "elect" – would be regulated by Louisiana's campaign finance laws, thereby triggering disclosure of the organization's donors. Rather than guess at how regulators might treat its communications, CFIF stood silent until the law was narrowly construed by the Fifth Circuit in *Carmouche*.

18.     The second instance of self-censorship occurred in October 2012.  At that time, CFIF again wished to speak to the public in the Western District of Louisiana on matters of vital public interest, including justice-related themes illustrated by candidates for a vacancy on the Louisiana Supreme Court.  CFIF wished to spend more than $500 to broadcast such speech on radio/television stations and had talked with a vendor about its plans.  However, CFIF discovered that the Fifth Circuit's narrowing construction was not being respected, and the risk that Defendants would construe the definition of "expenditure" to apply to CFIF's speech again forced it to self-censor and to stand mute.

19.     In addition to the reporting and disclosure obligations flowing directly from making expenditures or contributions of more than $500, CFIF would have run the risk that it would be deemed a political committee, subject to the associated intrusions and burdens.  For that reason too, CFIF stood silent.

20.     CFIF now wishes to raise and spend funds to engage in public advertising in the weeks before the October 19, 2013 election for Caddo Parish District Court.  CFIF believes that this election will focus public attention on justice issues of interest to it.  As before, CFIF has taken steps to develop ads and has identified vendors to assist in its speech.  It has substantial funding in hand and believes it can raise additional funds (well in excess of $500), and the contemplated speech will use candidates in the pending race to illustrate issues of importance to CFIF.  CFIF cannot risk engaging in such speech so long as the Defendants reject the statutory meaning declared in *Carmouche* and seek to give the statute other and different meanings.

21. CFIF remains interested in engaging in similar speech in Louisiana into the future. Its speech will continue to be deterred in the same manner as described above unless effective relief is granted.

22. Many citizens of Louisiana and the Western District would like to receive and would benefit from the intended speech of the CFIF. The challenged laws defeat their right to receive such speech.

### Violation of the First Amendment

23. The First Amendment has as its core objective the protection of public speech about political and public issues. It protects the right to receive such speech, as well as the right to speak out. Because money must be spent to permit public speech, First Amendment protections extend to spending for the purpose of speech. To the extent that the First Amendment permits any limits on such speech, those limits must be narrowly tailored to serve compelling governmental interests. Burdens on core speech, such as disclosure requirements, also must satisfy exacting judicial scrutiny. Moreover, both the First Amendment and the due process guarantee of the Fourteenth Amendment demand that regulations of core speech display a high level of precision and clarity to assure that lawful speech is not suppressed as speakers seek to steer clear of the regulated zone.

24. The First Amendment also protects the right to associate for purposes of public speech, including the right to pool resources to speak effectively. This right protects the right of CFIF to associate with its donors, and the right of the donors to associate with one another and CFIF. Any law that burdens that right must be precisely tailored to serve important purposes.

25. The exercise of First Amendment rights is easily deterred, and unnecessary deterrence of the exercise of such rights imposes a high constitutional cost. The First Amendment requires that burdens to speech be defined in precise and objective terms so that speakers do not need to hedge, trim, or steer clear of possible regulation and do not face the risk that authorities will vary the meaning of the statutes to favor some speakers and disfavor others. The challenged Louisiana statute's definition of the "purpose" that determines whether a transfer is a regulated expenditure or a contribution and may result in political committee status is vague and imprecise, both on its face and as applied to speech by groups that are independent of any candidate, campaign, or political party.

(a) The statutory definition of expenditure, which turns on the presence of a "purpose" of "supporting, opposing, or otherwise influencing" an election has no clear and definite meaning that can be ascertained with confidence before speaking.

(b) The vagueness problem is compounded by defining the coverage of the statute in terms of the subjective views of government authorities as to the purpose of speakers. Intent often is misconstrued. Moreover, because speakers often are organizations that consist of various persons and entities acting through other persons and entities, determining how regulators will construe such an organization's intent is very difficult.

26. *Carmouche* sought to cure the facial vagueness of the statutory language by imposing a specific, narrow, and definite meaning, but Defendants have not followed that holding. Defendants' disregard of the statutory definition pronounced by *Carmouche* increases the chilling effect of the vagueness because it shows a willingness to take enforcement actions without regard for controlling law.

27. The challenged Louisiana statute, on its face and as construed and enforced by Defendants, has needlessly deterred CFIF and other similar speakers from exercising their core First Amendment rights and, hence, violates the First Amendment.

### Violation of the Civil Rights Act

28. The challenged laws were enacted and exist and Defendants' enforcement responsibilities were established and are exercised under color of law of the State of Louisiana. As alleged above, CFIF's speech is currently and will continue to be suppressed by the threat of civil and criminal penalties under Louisiana law, which is keyed to vague and imprecise standards. The fact that penalties have been imposed under those laws and that Defendants continue to pursue broad and vague constructions of the law despite the ruling of the Fifth Circuit demonstrates that the concerns of CFIF are well-founded and genuine. CFIF now is in the position of either risking penalties under color of Louisiana law or refraining from speech. The infringements of First and Fourteenth Amendment rights caused by state law and under color of state law violate 42 U.S.C. § 1983.

### Declaratory Relief and Further Relief

29. Defendants have sworn to enforce the laws of the State of Louisiana, including the challenged laws, and will seek to do so if they receive information that those laws have been violated as written and authoritatively construed. They each have special statutory authority to enforce the challenged laws. Defendants and those in privity with them have knowingly and willfully disregarded the binding determination of the U.S. Court of Appeals for the Fifth Circuit as to the meaning of the law, demonstrating a genuine and substantial risk of enforcement. That risk has caused and, unless remedied, will continue to cause CFIF to self-censor and refrain from speech about public issues in Louisiana. Thus, there is an actual controversy as to CFIF's legal

rights and relations with Defendants that requires explicit declaratory relief under 28 U.S.C. § 2201.

30. Defendants and their predecessors ignored the prior binding determination by the U.S. Court of Appeals for the Fifth Circuit. That conduct demonstrates that declaratory relief alone is not sufficient to protect the rights of CFIF. Therefore, further relief should be granted pursuant to 28 U.S.C. § 2202, as well as 42 U.S.C. § 1983.

**Irreparable Injury**

31. Because of the challenged laws and Defendants' refusal to respect the binding construction of those laws by the Fifth Circuit, CFIF twice has been forced to stand mute at times when it otherwise would have engaged in speech about public issues, and it now faces a third such event. Moreover, an unknown number of other speakers have been silenced. Until and unless an effective remedy is granted, CFIF, other similarly situated speakers, and would-be listeners will continue to be deprived of their right to such speech.

(a) The injury being inflicted here is particularly severe during the narrow window of time just before the impending election in which the public is most interested in and attuned to discussion of the issues CFIF wishes to address.

(b) Persons who wish to receive the speech of CFIF are particularly injured because this narrow period before the election is when they may make use of that speech in discourse with others and in assessing the presentations of the candidates.

(c) The injury is compounded because it deprives CFIF of the benefit of a binding decision in litigation already obtained by CFIF against Defendants and their predecessors in office.

32. As public officials, Defendants have a compelling interest in preserving First Amendment freedoms and must do so in full compliance with their litigated legal obligations. The public shares those interests.

## Prayer

**WHEREFORE**, Plaintiff CFIF requests a declaration that Louisiana's statutory definition of expenditure is unconstitutionally vague and void and/or that the statute has only the meaning given to it in *Carmouche* (i.e., magic words of express advocacy), permanent injunctive relief forbidding enforcement of the invalid law or forbidding enforcement of any meaning other than that established in *Carmouche*; an award of legal fees and expenses pursuant to 42 U.S.C. § 1988; and such other relief as may be just.

Respectfully Submitted,


*/s/Christopher K. Ralston*_____
PHELPS DUNBAR, L.L.P.
CHRISTOPHER K. RALSTON (#26706)
BRYAN EDWARD BOWDLER (#32097)
365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone: (504) 566-1311
Telecopier:  (504) 568-9130
Email:  ralsonc@phelps.com
          bryan.bowdler@phelps.com


*Of Counsel:*

Renee L. Giachino (*pro hac vice pending*)
Center for Individual Freedom
815 King Street, Suite 303
Alexandria, VA 22314
(703) 535-5836

Thomas W. Kirby (*pro hac vice pending*)
Caleb P. Burns (*pro hac vice pending*)
Andrew G. Woodson (*pro hac vice pending*)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
(202) 719-7000

**ATTORNEYS FOR PLAINTIFF, CENTER FOR INDIVIDUAL FREEDOM**